## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES HOLDEN,<br>4565 Greenthread Court<br>Zionsville, IN 46077<br><br>         Plaintiff,<br><br>v.<br><br>FEDERAL LABOR RELATIONS AUTHORITY<br>and SUSAN TSUI GRUNDMANN, in her<br>official capacity as Chairman of the<br>Federal Labor Relations Authority,<br>1400 K Street, NW<br>Washington, DC 20005<br><br>         Defendants. | **Case No. 1:23-cv-3596**<br><br><br>**COMPLAINT** |

## INTRODUCTION

1.     This is a lawsuit by which Plaintiff James Holden ("Holden") seeks to vindicate his right not to be included in a mixed bargaining unit that does not represent his interests without Defendant Federal Labor Relations Authority ("FLRA") first holding a proper election that complies with the law.

2.     FLRA is an independent federal agency tasked with overseeing labor relations for more than one million federal employees.

3.     As part of its duties, FLRA is responsible for ensuring that bargaining units of federal employees are "appropriate"—"only if the determination will ensure a clear and identifiable community of interest among the employees in the unit and

will promote effective dealings with, and efficiency of the operations of the agency involved." 5 U.S.C. § 7112(a).

4.      The Federal Service Labor-Management Relations Statute ("FSLMRS"), 5 U.S.C. §§ 7101–35, forbids FLRA from determining that a bargaining unit is appropriate if it includes both professional and nonprofessional employees—"unless a majority of the professional employees vote for inclusion in the unit." 5 U.S.C. § 7112(b)(5).

5.      Holden is an Administrative Judge employed by the United States Department of Agriculture ("USDA") in the Office of Hearings and Appeals ("OHA"). Holden is a professional employee who has been placed in a bargaining unit with nonprofessional employees. On information and belief, FLRA failed to hold a proper election to determine whether a majority of the affected professionals wanted to be included in this unit in violation of the FSLMRS.

6.      Holden's bargaining unit does not represent his interests because it includes nonprofessional employees whose interests diverge from the professional employees. It lacks a clear and identifiable community of interest and does not promote effective dealings with or efficient operations of the OHA. Holden objects to being included in this bargaining unit.

7.      On information and belief, FLRA destroyed or failed to maintain appropriate records related to the election that produced the combined bargaining unit to which Holden is subjected. FLRA's conduct violated the Federal Records Act ("FRA"). But, on information and belief, Defendants have not initiated an action

through the Attorney General of the United States to recover these records. This inaction violates the FRA. 44 U.S.C. § 3106(a).

8.      Further, FLRA's failure to generate and/or preserve records relating to the election that created Holden's bargaining unit reveals that FLRA's recordkeeping and retention policies fall short of the agency's duties under the FRA. 44 U.S.C. §§ 3101–02.

9.      By failing to hold an appropriate vote of professionals to see if they consented to being placed in a mixed bargaining unit with nonprofessionals, Defendants have also violated Holden's rights to free association and choice guaranteed to him by the First Amendment of the United States Constitution.

10.     This lawsuit seeks to vindicate Holden's rights under the FSLMRS, the FRA, and the United States Constitution.

## JURISDICTION AND VENUE

11.     This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 28 U.S.C. § 1331 and 5 U.S.C. §§ 701–06. The Court may grant declaratory relief pursuant to 28 U.S.C. §§ 2201–02 and 5 U.S.C. §§ 702 and 706, and award costs and counsel fees pursuant to 28 U.S.C. § 2412.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1)(A) (defendants reside in this District).

## PARTIES

13.     Plaintiff James Holden is an attorney and Administrative Judge who is employed in the OHA of USDA. Holden is a United States citizen. Holden is a "professional employee" as defined in 5 U.S.C. § 7103(a)(15).

14.     Defendant FLRA is an independent agency of the United States government. 5 U.S.C. § 7104(b). FLRA is responsible for "provid[ing] leadership in establishing policies and guidance relating to matters under" the FSLMRS and is required, in accordance with the FSLMRS and its own regulations, to "determine the appropriateness of units for labor organization representation." *Id.* § 7105(a)(1)–(2)(A).

15.     Defendant Susan Tsui Grundmann is the Chairman of FLRA and thus its head.

## FACTS

16.     On May 11, 1995, Michael W. Doheny ("RD Doheny"), then the regional director of FLRA's Washington Regional Office, certified a voluntary agreement between the National Appeals Division of USDA, the American Federation of State, County and Municipal Employees, Council 26, AFL-CIO ("Council 26"), and the National Federation of Federal Employees, Local 858. Exhibit A, hereto.

17.     RD Doheny's certification recognized Council 26 as the "exclusive representative of a unit of employees of the National Appeals Division" that included "[a]ll nonprofessional employees employed by [USDA], National Appeals

Division in the Washington, DC metropolitan area, but excluding all management officials, supervisors and employees described in 5 U.S.C. 7112(b)(2), (3), (4), (6) and (7)." *Id.* at 1–2.

18.    In or about 1998, FLRA Atlanta Region Regional Director Brenda M. Robinson ("RD Robinson") supervised an election. Exhibit B, hereto, at 1. The individuals included in that election were "[a]ll hearing officers and regional office employees nationwide, employed by [USDA], National Appeals Division" ("Election"). *Id.* Based on a review of the "valid ballots" that had "been cast," Robinson concluded that "a majority" voted to be included in the nonprofessional bargaining unit represented by Council 26 and certified by RD Doheny in 1995. *Id.*

19.    Accordingly, on or about February 24, 1998, RD Robinson certified a new combined bargaining unit of "[a]ll non-professional employees of [USDA], National Appeals Division, in the Washington, DC Metropolitan Area, and all hearing officers and regional office employees nationwide." *Id.* at 1–2. Excluded from that certification were "[a]ll management officials, supervisors, including Deputy Assistant Directors, and employees described in 5 U.S.C. 7112(b)(2), (3), (4), (6), and (7)." *Id.* at 2.

20.    On information and belief, the Election included ***both*** "hearing officers," who are professionals, and "regional office employees," who are typically nonprofessionals. 5 U.S.C. § 7112(b)(5) forbade RD Robinson from determining the new combined bargaining unit was appropriate "unless a majority of the professional employees vote[d] for inclusion in the unit." The certification contains

no information about whether a majority of the affected professionals voted to be included in the nonprofessional unit represented by Council 26.

21.    On September 12, 2017, Jessica Bartlett, the regional director of FLRA's Washington Regional Office ("RD Bartlett"), issued a Decision and Order finding that OHA is the "successor employer of bargaining unit employees who were transferred from" the Appeals Division. Exhibit C, hereto, at 1.[1] Accordingly RD Bartlett found that Council 26 "retains its status as the exclusive representative of those employees." *Id.* RD Bartlett's "[f]indings" relied upon the February 1998 certification of a mixed unit of the Appeals Division. *Id.* Crucially, RD Bartlett certified that Council 26 is the exclusive representative of a unit of "[a]ll professional and nonprofessional employees nationwide, employed by" OHA. Exhibit D, hereto, at 1.

22.    On March 19, 2018, RD Bartlett issued another Decision and Order permitting Council 26 to be replaced as exclusive representative of the mixed OHA bargaining unit by a new union: the American Federation of State, County and Municipal Country Employees, District Council 20, AFL-CIO ("Council 20"). Exhibit E, hereto, at 1. RD Bartlett's "[f]indings" relied upon the February 1998 certification of a mixed unit of the Appeals Division. *Id.* at 2.

23.    RD Bartlett thus issued an Amended Certification of Representative certifying that Council 20 is the exclusive representative of a unit of "[a]ll

---

[1] RD Bartlett's order noted that, as part of a regulatory efficiency initiative, OHA became the 'umbrella organization' for several previously diffuse divisions of the USDA, including the Appeals Division, on May 28, 2017. Ex. C at 2.

professional and nonprofessional employees nationwide, employed by" OHA. Exhibit F, hereto.

24.    On the basis of RD Bartlett's Certification, OHA and Council 20 entered into a collective bargaining agreement ("CBA") that was effective on July 24, 2019, and revised on May 26, 2022. Exhibit G, hereto (relevant excerpts). The CBA sets Holden's working conditions and prevents him from negotiating with OHA about the same. *E.g.*, CBA art. IV sec. I.

25.    On information and belief, FLRA does not have records related to the Election and accordingly there is no way to reconstruct the identity of who was included, whether they were professional or nonprofessional employees at that time, or how they voted.

26.    On information and belief, the National Archives and Records Administration ("NARA" or "the Archivist") does not have records related to the Election either. On information and belief, the latest year NARA has case file records for FLRA is 1992.

27.    On information and belief, FLRA destroyed or otherwise failed to maintain the records related to the Election.

28.    Under the FRA, the head of FLRA is required to "***make*** and ***preserve*** records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency . . . ." 44 U.S.C. § 3101 (emphasis added); *see also* 36 C.F.R. § 1220.30(a).

29.    The FRA defines "records" as:

> all recorded information, regardless of form or characteristics, made or received by a Federal agency under Federal law or in connection with the transaction of public business and preserved or appropriate for preservation by that agency or its legitimate successor as evidence of the organization, functions, policies, decisions, procedures, operations, or other activities of the United States Government or because of the informational value of data in them . . . .

44 U.S.C. § 3301(a)(1)(A).

30.    Under sections 3101 and 3301 of the FRA, Grundman's predecessor as Chairman of the FLRA was required to generate records evidencing the Election (the "Records"), including but not limited to which employees of the proposed combined bargaining unit participated in the Election and whether they were professionals or not, because such records are necessary to document "the transaction of public business" and the "decisions, procedures, [and] operations" of FLRA. 44 U.S.C. § 3301(a)(1)(A).

31.    Besides being clearly mandated by the FRA's text, preserving the Records also furthers the spirit of the law. The Records show how FLRA carried out one of its core functions—structuring the federal workforce for purposes of effective collective bargaining in the public interest, *see* 5 U.S.C. § 7101(a)—with respect to the Appeals Division and successor OHA, which in turn perform significant government functions. Further, the Records have ongoing present and future significance in that the bargaining unit created by the Election shapes the very essence of Plaintiff's relationship with his employer twenty-five years after the fact and will for years to come.

32.     The FRA requires NARA to "promulgate schedules authorizing the disposal, after the lapse of specified periods of time, of records of a specified form or character common to several or all agencies," if such records lack "sufficient administrative, legal, research, or other value to warrant their further preservation by the United States Government." 44 U.S.C. § 3303a(d).

33.     The FRA imposes a corollary duty on federal agencies to "establish and maintain an active, continuing program for . . . efficient management of" their records that provides for, among other things, "cooperation with the Archivist in applying standards, procedures, and techniques designed to . . . facilitate the segregation and disposal of records of temporary value . . . ." 44 U.S.C. § 3102(3). Agencies must also comply with regulations promulgated by the Archivist relating to records retention and destruction. *Id.* § 3102(4).

34.     If an agency wishes to dispose of any material that meets the FRA's definition of "records," it must secure permission from the Archivist, who has the final say over whether federal records may be destroyed. 44 U.S.C. § 3303a(a).

35.     Accordingly, any "records" under the FRA, the disposal of which have not been specifically authorized by NARA, are "permanent records" that "must be transferred to [NARA] for preservation . . . ." *Competitive Enter. Inst. v. EPA*, 67 F. Supp. 3d 23, 27 (D.D.C. 2014) (Collyer, J.).

36.     Pursuant to the mandate of 44 U.S.C. § 3303a(d), NARA has issued "General Records Schedule 2.3: Employee Relations Records" ("GRS 2.3"), which is a records disposition schedule that "covers records documenting activities related to

9

managing relationships between the agency, its employees, and its unions and bargaining units." Exhibit H, hereto, at 1.

37.    GRS 2.3 applies to all federal agencies, not just FLRA. *Id.*

38.    GRS 2.3 contains a section designating certain FLRA "case files" as temporary records subject to destruction after three years. *Id.* at 4–5.

39.    Crucially, however, GRS 2.3 exempts from this designation "[c]orresponding case files at FLRA" and instead directs that FLRA must "schedule[]" these records itself. *Id.* at 5.

40.    Accordingly, "FLRA case files" are subject to destruction only if: (1) they are in the custody of an agency ***other*** than FLRA and three years have passed since their creation; or (2) FLRA provides for their destruction in a NARA-approved recordkeeping schedule of its own.

41.    Under the FRA's record-making mandate, FLRA's conduct of the Election should have produced a "case file" and other records that are not subject to disposal under GRS 2.3. *See* 44 U.S.C. § 3101.

42.    On information and belief, FLRA has not issued a separate schedule addressing the disposal of "case files" or other records relating to representation proceedings such as the Election.

43.    On information and belief, FLRA created records and/or a "case file" pertaining to the Election but has since destroyed or otherwise disposed of it/them in whole or in part.

44.     Alternatively, on information and belief, the Records remain in FLRA's custody but have been misplaced such that they are beyond immediate retrieval.

45.     On October 4, 2022, a staff member at undersigned counsel's law firm contacted FLRA seeking records relating to any elections or proceedings pertaining to certification of an exclusive representative for the Appeals Division, including the Election.

46.     On November 10, 2022, a representative of FLRA responded with documents pertaining to the above-noted 2018 change in the labor union representing the Appeals Division (*see* ¶¶ 22–23, *supra*) but produced no documents relating to the Election. The FLRA representative stated: "Federal Record retention requirements result in most case files being destroyed after 7 years. And, being moved off-site after about four years." "Given that," the representative concluded, "I'll be surprised to find more than the Certification . . . ."

47.     Accordingly, on November 16, 2022, the same staff member at undersigned counsel's law firm contacted NARA seeking all records relating to the Election.

48.     On December 2, 2022, a member of NARA's "Textual Reference Operations" department advised that the most recent FLRA case file in NARA's possession is from 1992, which means NARA has no records pertaining to the Election.

49.     On information and belief, no Defendant has initiated an enforcement action through the United States Attorney General with respect to the missing Election records.

## CLAIMS FOR RELIEF

### COUNT ONE
Violation of the Administrative Procedure Act, 5 U.S.C. §§ 701–06

50.     Holden re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

51.     Under the APA, a person "adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof" and may obtain declaratory and injunctive relief. 5 U.S.C. § 702.

52.     Under the APA, courts must "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious . . . or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Courts must also "hold unlawful and set aside agency action" that is "in excess of statutory . . . authority or limitations, or short of statutory right." *Id.* § 706(2)(C).

53.     FLRA's Election was arbitrary, capricious, and otherwise not in accordance with law because, on information and belief, its electors included both professional and nonprofessional employees. FLRA then certified a mixed bargaining unit on the basis of the Election in violation of the FSLMRS. 5 U.S.C. § 7112(b)(5). That certification was likewise arbitrary, capricious, and not in accordance with law. *Id.*; *cf. Hornbeck Offshore Transp., LLC v. U.S. Coast Guard*, 424 F. Supp. 2d 37, 52 (D.D.C. 2006) (Kollar-Kotelly, J.) ("The Agency's failure to

recognize the plain language and meaning of 46 U.S.C. § 3703a(e) ensured that it gave ENERGY 8701 an incorrect phase-out date of January 1, 2005. Such an action was arbitrary, capricious, and otherwise not in accordance with the law, in violation of the APA.").

54.    The Election and FLRA's certification of a mixed bargaining unit were also in excess of statutory authority, or limitations, or short of statutory right because the FSLMRS says FLRA may not certify a mixed bargaining unit unless a majority of affected professionals vote for it. 5 U.S.C. § 7112(b)(5); *see Amalgamated Transit Union v. Skinner,* 894 F.2d 1362, 1364 (D.C. Cir. 1990) ("Where Congress prescribes the form in which an agency may exercise its authority, however, we cannot elevate the goals of an agency's action, however reasonable, over that prescribed form.").

55.    D.C. Circuit precedent is that Holden may not bring a claim in district court under the APA about a FLRA bargaining unit determination. *Ass'n of Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 341 (D.C. Cir. 2002). The Court held that because the FLSMRS precludes direct appellate court review of FLRA bargaining unit determinations (*see* 5 U.S.C. § 7123(a)(2)) it also impliedly precludes district court review. *Id.* at 341–42 ("We cannot imagine that Congress, having vested in courts of appeals exclusive jurisdiction to review all Authority decisions except

those relating to appropriate unit determinations, would have intended that such determinations could nevertheless be reviewed by district courts.").

56.    The Supreme Court overruled *Civilian Technicians* by implication in *Axon Enterprise, Inc. v FTC*, 598 U.S. __, 143 S. Ct. 890 (2023) including because *Civilian Technicians* purports to "foreclose all meaningful judicial review" of FLRA's bargaining unit decisions and Holden's challenge raises "standard questions of administrative and constitutional law, detached from considerations of agency policy." *Id.* at 902, 905; *see also id.* at 900–01 ("The ultimate question is how best to understand what Congress has done—whether the statutory review scheme, though exclusive where it applies, reaches the claim in question.").

57.    Holden is therefore permitted to bring his APA claim in this Court and seeks an order holding unlawful and setting aside the Election, the mixed unit certification, and all downstream orders by FLRA.

58.    Holden also seeks an order from this Court compelling agency action to rescind the mixed unit certification and disallow collective bargaining as to the professionals in OHA by Council 20 unless and until FLRA holds an election that is compliant with 5 U.S.C. § 7112(b)(5) and a majority of the professionals in OHA vote for inclusion in a mixed unit. *Id.* § 706(1).

**COUNT TWO**
*Ultra Vires* Action

59.    Holden re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

60.    "Courts will exercise their power to review alleged *ultra vires* agency action when an agency patently misconstrues a statute, disregards a specific and unambiguous statutory directive, or violates a specific command of a statute." *Hunter v. FERC*, 569 F. Supp. 2d 12, 16 (D.D.C. 2008) (Leon, J.) (cleaned up). That is the case "even in the face of a statutory provision that precludes judicial review" where "the agency's alleged conduct [is] contrary to a specific statutory prohibition that is both clear and mandatory and the party aggrieved [has] no other meaningful and adequate means of vindicating its statutory rights . . . ." *AFGE, Loc. 2510 v. FLRA*, 453 F.3d 500, 506 (D.C. Cir. 2006) (cleaned up).

61.    FLRA's Election, mixed unit certification, and downstream orders are *ultra vires* because they patently misconstrue the FSLMRS to permit certification of a mixed bargaining unit without a vote of the affected professionals affirmatively agreeing thereto; because they disregard a specific and unambiguous statutory directive in the FSLMRS that FLRA shall not determine that a bargaining unit is appropriate without such a vote; and because they violate the FLSMRS's specific command that FLRA shall not determine a mixed bargaining unit to be appropriate absent a compliant election ***only*** among affected professional employees. 5 U.S.C. § 7112(b)(5).

62.    Holden lacks any other meaningful and adequate method by which to vindicate his statutory right not to be included in a mixed bargaining unit without a majority vote of the affected professionals.

63.     Holden seeks an order from this Court holding *ultra vires* and setting aside FLRA's Election, mixed unit certification, and all downstream orders by FLRA.

### COUNT THREE
Violation of Federal Records Act, 44 U.S.C. §§ 2101–20, 2901–12, 3101–14
Asserted via 5 U.S.C. § 702

64.     Holden re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

65.     Under the FRA, Grundmann as head of FLRA is required to notify the Archivist of "any actual, impending, or threatened unlawful removal, defacing, alteration, corruption, deletion, erasure, or other destruction of records" in FLRA's custody. 44 U.S.C. § 3106(a).

66.     The FRA also obligates Grundmann to coordinate with the Archivist to "initiate action through the Attorney General for the recovery of records" that she "knows or has reason to believe have been unlawfully removed" from FLRA's custody. 44 U.S.C. § 3106(a).

67.     The FRA imposes a corollary obligation on the Archivist to notify Grundmann of any unlawful removal or destruction of records and assist her in initiating legal action through the Attorney General. 44 U.S.C. § 2905(a).

68.     Because they document the "decisions, procedures, and essential transactions of" FLRA and "the transaction of public business," the Records are "records" that must be preserved under the FRA. 44 U.S.C. § 3101.

69.     Through email correspondence with staff of undersigned counsel's law firm, representatives of FLRA have been made aware of the absence of the Records. *See* ¶¶ 45–46, *supra*.

70.     This awareness triggered FLRA's mandatory duty under the FRA to "initiate action through the Attorney General" for recovery of the Records. 44 U.S.C. §§ 2905(a), 3106(a).

71.     To date, on information and belief, FLRA has not taken steps to initiate enforcement action through the Attorney General.

72.     Holden is aggrieved by FLRA's failure to initiate enforcement action for recovery of the Records because reviewing the Records would allow him to better assess the lawfulness of the bargaining unit of which he is a member. Specifically, the Records would allow Holden to have more information about whether RD Robinson obtained the separate majority vote of professional employees in the mixed unit that was required by 5 U.S.C. § 7112(b)(5).

73.     Holden seeks an order from this Court compelling Defendants to initiate an enforcement action with the Attorney General seeking recovery of the Records.

**COUNT FOUR**
Violation of Federal Records Act, 44 U.S.C. §§ 2101–20, 2901–12, 3101–14
Asserted via 5 U.S.C. § 702

74.     Holden re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

75.    Under the FRA, Grundmann and her predecessors are/were required to "maintain an active, continuing program for the economical and efficient management of" FLRA's records that includes "effective controls over the creation . . . maintenance and use of records in the conduct of current business . . . ." 44 U.S.C. § 3102(1).

76.    FLRA's records management program must also provide for "cooperation with the Archivist in applying standards, procedures, and techniques designed to . . . facilitate the segregation and disposal of records of temporary value . . . ." 44 U.S.C. § 3102(3).

77.    FLRA's records management program is deficient because it fails to provide for preservation of records evidencing employee elections under the FSLMRS that result in the creation of new bargaining units. These elections reflect a core function of FLRA, namely, structuring the federal workforce for effective collective bargaining in the public interest. *See* 5 U.S.C. § 7112(a). Therefore, materials showing how these elections were conducted, who participated, and so forth, are "records" under the FRA because they document "the transaction of public business" and the "decisions, procedures, [and] operations" of FLRA. 44 U.S.C. § 3301(a)(1)(A).

78.    Because the Records are the type of material that falls under 44 U.S.C. § 3301(a)(1)(A), FLRA's records retention program should have provided for their permanent preservation.

79.    Additionally, because they are not subject to any specific disposal schedule or program approved by NARA, the Records are "permanent records" that FLRA should have transferred to NARA for safekeeping. *See Competitive Enter. Inst.*, 67 F. Supp. 3d at 27.

80.    NARA, however, has indicated through a representative that the most recent FLRA case files in its possession are from 1992. *See* ¶ 48, *supra*.

81.    FLRA's records management program is deficient in failing to provide for transfer of the Records to NARA's custody.

82.    Additionally, in GRS 2.3, NARA specifically directed FLRA to create a records disposition schedule for FLRA "case files" in its possession. Ex. H at 4.

83.    To date, on information and belief, FLRA has not created this schedule. FLRA is therefore in violation of its duty under the FRA to abide by regulations promulgated by NARA relating to records retention. 44 U.S.C. § 3102(4).

84.    Holden is aggrieved by FLRA's and Grundmann's failure to implement an FRA-compliant records management program because such a program would have provided for retention of the Records, which Holden could use to better assess the lawfulness of the combined bargaining unit created by the Election.

85.    Holden seeks an order from this Court declaring that FLRA's records management program is deficient, and enjoining Defendants to amend said program to provide for preservation of the Records. Such an amendment will increase the likelihood of the Records being actually recovered and maintained,

which will in turn further Holden's aim of using them to assess the lawfulness of his current bargaining unit.

## COUNT FIVE
Violation of the First Amendment to the United States Constitution

86.    Holden re-alleges and incorporates by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

87.    The First Amendment to the United States Constitution protects associational and free choice rights. The right to freely associate "lies at the foundation of a free society," *Shelton v. Tucker*, 364 U.S. 479, 486 (1960), and "[f]reedom of association . . . plainly presupposes a freedom not to associate." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 623 (1984).

88.    Other professional employees' views, priorities, and interests more closely align with Holden's than do those of nonprofessional employees. Holden would therefore prefer to be a member of and associate with a bargaining unit that consists solely of professional employees. 5 U.S.C. § 7112(a) (requiring "a clear and identifiable community of interest among the employees" of every bargaining unit), or no bargaining unit at all.

89.    Defendants violated Holden's rights to free association and choice under the First Amendment by (1) permitting the certification of the mixed bargaining unit without first obtaining the statutorily required vote of the affected professionals (including Administrative Judges like Holden) affirmatively agreeing thereto and (2) forcing Holden against his will to be a member of and associate with

that improperly mixed bargaining unit which consists primarily of employees who do not share his views, priorities, and interests.

90.    "[T]he [FSLMRS] does not . . . preclude [district court] review of constitutional claims." *Griffith v. FLRA*, 842 F.2d 487, 499 (D.C. Cir. 1988). Accordingly, Holden is permitted to bring his constitutional claim in this Court.

91.    Holden seeks an order declaring that Defendants' actions in forcing him to be included in a mixed bargaining unit without a majority vote of the affected professionals violates the First Amendment to the United States Constitution.

## PRAYER FOR RELIEF

WHEREFORE, Holden prays that this Court:

A.    Hold unlawful and set aside FLRA's Election, mixed unit certification, and all ensuing orders pursuant to 5 U.S.C. §§ 702 and 706, 28 U.S.C. §§ 2201–02, and *ultra vires* review;

B.    Enjoin Defendants from relying on the Election for any purpose and compel agency action to rescind the mixed unit certification and disallow collective bargaining as to the professionals in OHA by Council 20 unless and until FLRA holds an election that is compliant with 5 U.S.C. § 7112(b)(5) and a majority of the professionals in OHA vote for inclusion in a mixed unit;

C.    Order Grundmann to initiate an enforcement action with the Attorney General seeking recovery of the Records;

D.      Order Defendants to amend FLRA's records management program to provide for preservation of the Records and other FLRA case files evidencing employee elections under FSLMRS that result in the creation of new bargaining units;

E.      Declare that Defendants' actions in forcing Holden to be included in a mixed bargaining unit without a majority vote of the affected professionals violates the First Amendment to the United States Constitution;

F.      Enjoin Defendants from forcing Holden to be included in a mixed bargaining unit without a majority vote of only the affected professionals;

G.      Grant Holden an award of attorneys' fees and other litigation costs reasonably incurred in this action pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

H.      Grant such other and further relief as the Court may deem just and proper.

[Signature block on next page.]

Respectfully submitted,

Dated: December 4, 2023

**/s/ David R. Dorey**

David R. Dorey
DC Attorney I.D. No. 1015586
Email: drdorey@fairnesscenter.org
Stephen B. Edwards
D.D.C. Bar No. PA0131
Email: sbedwards@fairnesscenter.org
Nathan J. McGrath
D.D.C. Bar No. PA0113
Email: njmcgrath@fairnesscenter.org
THE FAIRNESS CENTER
500 North Third Street, Suite 600B
Harrisburg, Pennsylvania 17101
Telephone: 844.293.1001
Facsimile: 717.307.3424

*Attorneys for Plaintiff James Holden*