UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JAMES HOLDEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 23-3596 (RJL) |
| | ) |
| FEDERAL LABOR RELATIONS | ) |
| AUTHORITY, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## MEMORANDUM OPINION
(September 11, 2024) [Dkt. #13]

Plaintiff James Holden has sued the Federal Labor Relations Authority ("FLRA") and its chairman, Susan Tsui Grundmann, alleging that the collective bargaining unit he belongs to was improperly certified over 25 years ago. He raises an *ultra vires* claim and alleges violations of the Administrative Procedure Act ("APA"), Federal Records Act ("FRA"), and the First Amendment. Because this Court lacks subject-matter jurisdiction over Holden's *ultra vires* and APA claims, and because he has failed to state a claim under either the FRA or First Amendment, I will GRANT defendants' motion to dismiss.

### BACKGROUND

**I.    Statutory Background**

The Federal Service Labor-Management Relations Statute ("FSLMRS") grants federal employees the right to organize and engage in collective bargaining. *See generally* 5 U.S.C. §§ 7101–7135; *id.* § 7102. The statute also established the Federal Labor Relations Authority ("FLRA"), which administers the collective-bargaining system created

1

by the FSLMRS. *See id.* §§ 7104–7105. The FLRA has the power to, among other things, "determine the appropriateness of units for labor organization representation" and to supervise and conduct elections. *Id.* § 7105(a)(2)(A)–(B). These powers can be and are delegated to appointed regional directors. *Id.* § 7105(d)–(e). The statute prohibits the FLRA from certifying as appropriate a bargaining unit that includes both professional and nonprofessional employees "unless a majority of the professional employees vote for inclusion in the unit." *Id.* § 7112(b)(5).

The statute also vests jurisdiction in the Courts of Appeals to review final orders from the FLRA, except for orders involving arbitration awards (unless the order involves an unfair labor practice) and orders involving appropriate unit determinations. *Id.* § 7123(a). The entire provision reads:

> (a) Any person aggrieved by any final order of the Authority other than an order under—
>
>> (1) section 7122 of this title (involving an award by an arbitrator), unless the order involves an unfair labor practice under section 7118 of this title, or
>>
>> (2) section 7112 of this title (involving an appropriate unit determination),
>
> may, during the 60-day period beginning on the date on which the order was issued, institute an action for judicial review of the Authority's order in the United States court of appeals in the circuit in which the person resides or transacts business or in the United States Court of Appeals for the District of Columbia.

Also relevant to this case is the Federal Records Act ("FRA"). The FRA "is a collection of statutes governing the creation, management, and disposal of records by federal agencies." *Pub. Citizen v. Carlin*, 184 F.3d 900, 902 (D.C. Cir. 1999); *see* 44 U.S.C. §§ 2101–20, 2901–12, 3101–07, 3301–14. It requires agencies to implement

2

programs to manage agency records, *id.* § 3102, and "establish safeguards against the removal or loss of records," *id.* § 3105. This includes working with the Archivist of the United States to manage, preserve, safeguard, and dispose of records. *Id.* § 3102(3). Each federal agency must submit to the Archivist a schedule proposing a timetable for disposing of records. *Id.* § 3303(3).

In the event "of any actual, impending, or threatened unlawful removal . . . or other destruction of records," the head of the federal agency must notify the Archivist and, with the Archivist's assistance, "initiate action through the Attorney General for the recovery of [the] records" that have been unlawfully removed or destroyed. *Id.* § 3106(a). The records covered include those that reflect decisions made by federal agencies. *See id.* § 3301(a)(1)(A).

## II. Factual and Procedural Background

Plaintiff James Holden is an Administrative Judge in the United States Department of Agriculture ("USDA") Office of Hearings and Appeals ("OHA"). Compl. [Dkt. #1] ¶¶ 5, 13. Holden is represented by the American Federation of State, County and Municipal Employees, Council 26, AFL-CIO, and his bargaining unit includes both professional and nonprofessional employees of the OHA. *Id.* ¶¶ 16, 21. The unit was certified to include both professional and nonprofessional employees by Regional Director Brenda Robinson in 1998. *Id.* ¶ 19.

Holden, a professional employee, objects to his membership in a bargaining unit with nonprofessional employees. *Id.* ¶¶ 6, 13. He claims that the interests of the nonprofessional employees "diverge from [those of] the professional employees," the

mixed unit "lacks a clear and identifiable community of interest," and that it "does not promote effective dealings with or efficient operations of" his department. *Id.* ¶ 6.

Holden, suspecting that Regional Director Robinson failed to hold a proper election, sought records related to the 1998 election from the FLRA and the National Archives and Records Administration ("NARA") in late fall 2022. *Id.* ¶¶ 5, 18–19, 45, 47. A representative of the FLRA could not produce any records related to the election, and noted that most case files are moved off site after four years and destroyed after seven years. *Id.* ¶ 46. A representative from NARA stated that the most recent FLRA case file in NARA's possession was from 1992! *Id.* ¶ 48.

On December 4, 2023, Holden filed a complaint against the FLRA and Chairman Grundmann in her official capacity, requesting injunctive and declaratory relief for *ultra vires* action and violations of the APA, FRA, and First Amendment. *See generally* Compl.

On February 2, 2024, the defendants filed a motion to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. Defs.' Mot. to Dismiss ("Mot.") [Dkt. #13]. Plaintiff filed his opposition on March 18, 2024. Pl.'s Opp. to Defs.' Mot. to Dismiss ("Opp.") [Dkt. #17]. Defendants filed their reply on April 24, 2024. Defs.' Reply to Pl.'s Opp. to Defs.' Mot. to Dismiss ("Reply") [Dkt. #19].

In the course of briefing, the parties produced two schedules governing the disposal of FLRA records. *See* Mot. Ex. 1; Opp. Ex. B. The first schedule (the "1986 Schedule") is a comprehensive, 23-page document detailing how all records of the FLRA will be retained, transferred, and disposed of. *See generally* Mot. Ex. 1. It specifies that files related to the certification of election results will be disposed of after three years if not

selected for permanent retention. *See id.* at 19–20. The second schedule (the "1990 Schedule") is just one page specifying that Regional Office Certification Records will be "[d]estroy[ed] when 20 years old, or when no longer needed, whichever comes later." *See* Opp. Ex. B. at 1.[1]

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) is a "threshold challenge to the Court's jurisdiction," requiring the Court to "determine whether it has subject matter jurisdiction in the first instance." *Taylor v. Clark*, 821 F. Supp. 2d 370, 372 (D.D.C. 2011) (quoting *Curran v. Holder*, 626 F. Supp. 2d 30, 32 (D.D.C. 2009)). At this stage, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation omitted). That said, a plaintiff's factual allegations "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Mercy Gen. Hosp. v. Becerra*, 643 F. Supp. 3d 16, 24 (D.D.C. 2022) (quoting *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001)). The Court should grant the motion to dismiss under Rule 12(b)(1) if

---

[1] The Court will take judicial notice of both schedules. This Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Our Circuit Court has on multiple occasions confirmed that it is proper to take judicial notice of public records, *see, e.g., New York v. Meta Platforms, Inc.*, 66 F.4th 288, 303 (D.C. Cir. 2023), and courts in this District have taken judicial notice of an agency's "operative recordkeeping policies" because there is "no reason to doubt" their authenticity, *e.g., Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Homeland Sec.*, 507 F. Supp. 3d 228, 243 (D.D.C. 2020). Neither party challenges the authenticity of either schedule.

the plaintiff fails to prove subject matter jurisdiction by a preponderance of the evidence. *Moran v. U.S. Capitol Police Bd.*, 820 F. Supp. 2d 48, 53 (D.D.C. 2011).

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a complaint." *Meta Platforms, Inc. v. Fed. Trade Comm'n*, --- F. Supp. 3d ---, 2024 WL 1121424, at *7 (D.D.C. 2024) (quoting *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002)). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 552 (2007). That is, the complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Id.* at 570. In analyzing a motion to dismiss under Rule 12(b)(6), the Court similarly accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Ralls Corp. v. Comm. on Foreign Inv. in the U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014). The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The Court is not required to accept as true "plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp.*, 758 F.3d at 315 (citing *Browning*, 292 F.3d at 242).

## DISCUSSION

### I. APA Claim

Holden brings his first claim under the APA, arguing that the FLRA's failure to hold a proper election as required by 5 U.S.C. § 7112(b)(5) was arbitrary and capricious and in excess of statutory authority. He brings his claim under 5 U.S.C. § 702, which provides judicial review for any "person suffering legal wrong because of agency action, or

6

adversely affected or aggrieved by agency action within the meaning of a relevant statute." That provision also specifies that judicial review is available only insofar as the governing "statute that grants consent to suit" does not "expressly or impliedly forbid[] the relief which is sought." *Id.* He argues that this Court should "hold unlawful and set aside" Regional Director Robinson's certification of the mixed bargaining unit because it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," *id.* § 706(2)(A), and "in excess of statutory jurisdiction, authority, or limitations," *id.* § 706(2)(C). Compl. ¶¶ 50–58.

However, the governing statute here, the FSLMRS, expressly precludes judicial review of "appropriate unit determination[s]" under "section 7112" of the statute. 5 U.S.C. § 7123(a)(2). In a case that was "not difficult" to decide, our Circuit Court held that this provision precludes judicial review of appropriate unit determinations in any federal court, not just in the federal courts of appeals. *Ass'n of Civilian Technicians, Inc. v. FLRA*, 283 F.3d 339, 341–42 (D.C. Cir. 2002); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Loy*, 367 F.3d 932, 935 (D.C. Cir. 2004) ("If an FLRA order falls within one of § 7123(a)'s two exceptions to review in the court of appeals, this does not mean the district courts are open. It means that review is precluded in any court."). Thus, because the governing statute granting consent to suit "expressly . . . forbids the relief which is sought," Holden's claim is not reviewable under the APA. 5 U.S.C. § 702.

Holden tries to get around this conclusion by arguing that the Supreme Court's decision in *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023), provides an avenue for judicial review because it requires courts to apply the factors

7

articulated in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), before concluding that judicial review of a claim is unavailable. Compl. ¶ 56; Opp. at 9. Because the Court in *Association of Civilian Technicians* did not do so, he argues, that case was effectively overruled. Compl. ¶ 56; Opp. at 9. But *Axon* and, by extension, *Thunder Basin* do not apply to Holden's claim.

In *Thunder Basin*, the Supreme Court considered whether a statute's "comprehensive enforcement and administrative-review scheme preclude[s] district court jurisdiction over [a party's] claims." *Thunder Basin*, 510 U.S. at 206. The Court did so by applying what are now known as the *Thunder Basin* factors:

> (1) Whether precluding district court jurisdiction would "foreclose all meaningful judicial review" of the claim;
>
> (2) Whether the claim is "wholly collateral to [the] statute's review provisions";
>
> (3) Whether the claim is "outside the agency's expertise."

*Axon*, 598 U.S. at 186 (quoting *Thunder Basin*, 510 U.S. at 212–13). In *Axon*, the Court applied those factors to decide whether federal district courts had jurisdiction to consider "sweeping constitutional claims" that challenged "the structure or very existence of an agency." 598 U.S. at 189. In both cases, the statutory review scheme provided for agency review followed by judicial review in a court of appeals. *See Thunder Basin*, 510 U.S. at 204; *Axon*, 598 U.S. at 180.

But *Axon* and *Thunder Basin* only apply when a court must "determine whe[ther] a statutory scheme *implicitly* strips a district court of jurisdiction." *Bohon v. FERC*, 92 F.4th 1121, 1123 (D.C. Cir. 2024) (emphasis added). Neither precedent applies to cases where,

8

as here, Congress has explicitly stripped the district court of jurisdiction. *See id.* Because "Congress explicitly exercised its constitutional power to define the jurisdiction of federal courts" for claims challenging appropriate unit determinations, *see* 5 U.S.C. § 7123(a)(2), neither *Axon* nor *Thunder Basin* apply. *Id.* at 1124.[2]

In short, judicial review of Holden's claim is expressly precluded under 5 U.S.C. § 7123(a), and neither *Axon* nor *Thunder Basin* provide an avenue for district court review.

## II.   *Ultra Vires* Claim

Holden also challenges the FLRA's certification of his mixed bargaining unit as *ultra vires* and alleges that this Court has jurisdiction under the narrow exception articulated in *Leedom v. Kyne*, 358 U.S. 184 (1958). Compl. ¶¶ 59–63. However, Holden has failed to allege the "brazen defiance" required to invoke the "extraordinary" jurisdiction of *Leedom*. *Hunter v. FERC*, 569 F. Supp. 2d 12, 16 (D.D.C. 2008) (quotation omitted); *Ass'n of Civilian Technicians*, 283 F.3d at 344 (quotation omitted).

In *Leedom v. Kyne*, the Supreme Court held that the federal district court had jurisdiction to vacate a determination that the National Labor Relations Board had made "in excess of its powers." 358 U.S. at 185. The National Labor Relations Act ("NLRA") provided that "the Board shall not [] decide that any unit is appropriate for [collective bargaining] purposes if such unit includes both professional employees and employees who are not professional employees unless a majority of such professional employees vote for

---

[2] Furthermore, our Circuit Court recently reaffirmed the holding in *Association of Civilian Technologies* in determining that § 7123(a)(1) foreclosed judicial review of arbitration awards. *Am. Fed'n of Gov't Emps., Nat'l Council of HUD Locs. Council 222 v. FLRA*, 99 F.4th 585, 589–97 (D.C. Cir. 2024). The Court stated that "in nonconstitutional cases, if a federal statute clearly bars district court jurisdiction—as § 7123(a) does . . . —that ends the matter." *Id.* at 592.

inclusion in such unit." *Id.* (quoting 29 U.S.C. § 159(b)(1)). The Board failed to hold such an election but nevertheless certified a mixed bargaining unit of both professional and nonprofessional employees as appropriate. *Id.* Despite the fact that the NLRA foreclosed judicial review of the Board's collective bargaining unit certifications, the Supreme Court held that the federal district court had "jurisdiction of an original suit" to "strike down an order of the Board made in excess of its delegated powers and contrary to a specific prohibition in the Act." *Id.* at 188–89.

Holden argues that his claim is on all fours with the claim at issue in *Leedom v. Kyne*—the failure to hold a proper election before certifying a mixed bargaining unit. Opp. at 18–29. However, our Circuit Court has held that a plaintiff must show "extraordinary circumstances" to overcome "the nearly insurmountable limitations" on *Leedom* jurisdiction. *U.S. Dep't of Just. v. FLRA*, 981 F.2d 1339, 1342–43 (D.C. Cir. 1993). In *Leedom*, the NLRB did not dispute that it had "disobeyed the express [statutory] command" and "acted in excess of its powers." 358 U.S. at 186–87. This constituted an "open violation of statutory authority" that justified the "extraordinary" invocation of jurisdiction. *Ass'n of Civilian Technicians*, 283 F.3d at 344. "Garden-variety errors of law or fact are not enough." *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988).

Holden is trying to invoke the extraordinary jurisdiction of *Leedom v. Kyne* based on nothing more than "'naked assertion[s]' devoid of 'further factual enhancement'" that the FLRA failed to hold a vote pursuant to 5 U.S.C. § 7112(b)(5). *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557). Holden acknowledges that the 1998 certification—which was issued over 25 years ago—"contains no information about

10

whether a majority of the affected professionals voted to be included in the nonprofessional unit," and that the "FLRA does not have records related to the Election and accordingly there is no way to reconstruct the identity of who was included, whether they were professional or nonprofessional employees at that time, or how they voted." Compl. ¶¶ 20, 25. Despite these concessions, Holden alleges that, "[o]n information and belief, the Election included both . . . professionals[] and . . . nonprofessionals" in violation of the statute. *Id.* ¶ 20. These allegations fall far short of the "extraordinary circumstances" Holden must show in order to invoke "the nearly insurmountable limitations" on *Leedom* jurisdiction. *See U.S. Dep't of Just.*, 981 F.2d at 1342–43.

Furthermore, our Circuit Court recently considered an argument that a claim barred by 5 U.S.C. § 1723(a), as Holden's claim is, could be heard in district court under *Leedom* jurisdiction. *See Am. Fed'n of Gov't Emps., Nat'l Council of HUD Locs. Council 222 v. FLRA*, 99 F.4th 585 (D.C. Cir. 2024). Unfortunately for the plaintiff, the Court held that the *ultra vires* claim should be dismissed, stating clearly that "in nonconstitutional cases, if a federal statute clearly bars district court jurisdiction—as § 7123(a) does . . . — that ends the matter." *Id.* at 592. In other words, "5 U.S.C. § 7123(a) categorically bars district court review of [certain] FLRA [] decisions even if a party can show that the FLRA action was *ultra vires.*" *Id.* at 597 (Wilkins, J., concurring).

Because Holden has failed to show that his claim is of the sort that can be heard under *Leedom* jurisdiction, and because our Circuit Court has emphatically foreclosed review of an *ultra vires* claim otherwise barred by 5 U.S.C. § 7123(a), this Court lacks subject-matter jurisdiction over Holden's *ultra vires* claim.

11

## III.  FRA Claim[3]

Next, Holden alleges that the FLRA has violated its duties under the FRA by failing to initiate an action through the Attorney General for the recovery of the 1998 election records. Compl. ¶¶ 64–73. He "seeks an order from this Court compelling Defendants to initiate an enforcement action with the Attorney General seeking recovery of the [r]ecords." *Id.* ¶ 73. But Holden has failed to state a claim for relief under the FRA because he has failed to show a substantial likelihood that the records could be recovered through an enforcement action and to allege unlawful removal or destruction.

Private litigants may sue to compel an agency head to initiate an enforcement action with the Attorney General for the recovery of records unlawfully removed or destroyed. *See Jud. Watch, Inc. v. Kerry*, 844 F.3d 952, 954 (D.C. Cir. 2016). In order to have standing to bring this claim, a plaintiff must show that there is a "substantial likelihood" that the requested relief will redress his injury. *Cause of Action Inst. v. Tillerson*, 285 F. Supp. 3d 201, 205 (D.D.C. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). In other words, Holden "must demonstrate that there is a 'substantial likelihood' that [the records] will be recovered in an action by the Attorney General, and that the hoped-for redress is not built upon speculative inferences." *Id.* (citing *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000)).

---

[3] Count IV of Holden's complaint also alleges a violation of the Federal Records Act—that the FLRA failed to create a schedule for the retention and disposal of records and submit it to the Archivist for approval. Compl. ¶¶ 74–85. Holden has withdrawn this claim in light of the schedule produced by the FLRA and attached to its motion to dismiss. Mot. Ex. 1; Opp. at 30–31.

Holden, however, has not shown that an enforcement action by the Attorney General will likely recover records documenting the 1998 election. The election was held over 25 years ago. Under the 1986 Schedule, those records would have been disposed of after three years—in 2001. *See* Mot. Ex. 1 at 19–20. Under the 1990 Schedule, those records would have been disposed of after twenty years—in 2018. *See* Opp. Ex. B at 1. Holden argues that the 1990 Schedule allows for records to be kept until "no longer needed," which means that they could have been retained "on an 'as-needed' basis." Opp. at 32. Despite his allegations that neither the FLRA nor the NARA have records related to the election, *see* Compl. ¶¶ 25–26, he nevertheless concludes that "the [r]ecords may still exist," Opp. at 32. Curiously, Holden provides no explanation for why the FLRA would need to retain records from an otherwise unremarkable election held over 25 years ago. Put simply, his argument that they still exist is entirely speculative.

Furthermore, to state a claim that an enforcement action through the Attorney General is necessary under the FRA, plaintiff has to allege an *unlawful* removal or destruction of records. 44 U.S.C. § 3106(a). Holden has entirely failed to allege that the destruction or removal of the 1998 election records was unlawful. *See* Compl. ¶ 43 ("FLRA created records . . . pertaining to the Election but has since destroyed or otherwise disposed of []them"); ¶ 44 ("the [r]ecords . . . have been misplaced such that they are beyond immediate retrieval"). Holden's arguments in support of his claim further demonstrate a misunderstanding of the standard for an enforcement action under the FRA. *See* Opp. at 33 ("Resolving this kind of uncertainty is one of the primary purposes of the

FRA's enforcement mechanism."). He has utterly failed to allege any unlawful destruction or removal of records, which dooms his FRA claim.

## IV.  First Amendment Claim

Holden's final count alleges that defendants violated his right to free association and choice under the First Amendment by "permitting the certification of the mixed bargaining unit without first obtaining the statutorily required vote of the affected professionals" and "forcing [him] against his will to be a member of and associate with that improperly mixed bargaining unit which consists primarily of employees who do not share his views, priorities, and interests." Compl. ¶ 89. He seeks "an order declaring that Defendants' actions in forcing him to be included in a mixed bargaining unit without a majority vote of the affected professionals violates the First Amendment to the United States Constitution." *Id.* ¶ 91. Please!

Holden does not have a First Amendment right to the bargaining unit of his choice. The Supreme Court has clearly stated that "the First Amendment does not impose any affirmative obligation on the government to listen, to respond or, in this context, to recognize [an] association and bargain with it." *Smith v. Ark. State Highway Emps.*, 441 U.S. 463, 465 (1979). And the First Amendment does not give Holden the right to bargain with the government as an individual either. *See Minn. Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 287–88 (1984). Thus, "[t]he right of federal employees to require the government to engage in collective bargaining is not constitutional but purely statutory." *Am. Fed'n of Gov't Emps. v. Loy*, 281 F. Supp. 2d 59, 65 (D.D.C. 2003); *see also Ass'n of Civilian Technicians, Mont. Air Chapter v. FLRA*, 756 F.2d 172, 177 (D.C. Cir. 1985)

("there is no constitutional right to bargain collectively with the federal government"); *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 488 (D.C. Cir. 2011) ("The First Amendment right of free association has never been held to mandate 'majority rule' in the labor relations sphere." (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1251–52 (2d Cir. 1992))).

In his opposition to defendants' motion to dismiss, Holden tries to avoid this by claiming that he "is not asking the Court to enforce majority rule," but rather that he just "wants out of his unlawful bargaining unit—no more, no less." Opp. at 36. But nowhere in his complaint does he allege that he was prohibited from leaving the union, which is a right the FSLMRS grants him. *See* 5 U.S.C. § 7102 (granting employees "the right to form, join, or assist any labor organization, *or to refrain from any such activity*, freely and without fear of penalty or reprisal"). As such, Holden has failed to state a claim for a violation of the First Amendment.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [Dkt. #13] is GRANTED. An order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge